OPINION OF THE COURT
Alexander, J.
 We are called upon on these appeals to determine the extent to which Labor Law § 240 (l)[1] imposes liability upon an *519 owner or contractor who has failed to provide any safety devices for workers at a building worksite, and the absence of such devices is the proximate cause of injury to a worker. Based on the clear language of the statute and its purpose as articulated by the Legislature, we hold that an owner or contractor under these circumstances is absolutely liable in damages for injuries sustained by such worker.
In Zimmer v Chemung County Performing Arts, plaintiff, an ironworker, was injured while working as a member of a crew erecting a steel skeleton for an addition to a building owned by defendant Chemung County Performing Arts. Plaintiff’s duties as a “connector” involved his assembling beams and columns that formed the skeleton. The accident occurred when plaintiff, in the manner usually employed by connectors in performing this task, scaled a 31-foot vertical column in order to direct a crane operator who was raising a horizontal beam to a position where plaintiff could reach it and effect the connection with the vertical column. In pulling himself over the top of the beam, plaintiff lost his grip and fell. He struck a horizontal beam in his descent and landed in an excavation outside of the structure’s perimeter.
Ladders were present at the worksite, but none had been erected for plaintiff’s specific task. In addition, it is uncontroverted that no safety devices were erected or provided to plaintiff. Defendants, the building owner and several contractors, presented evidence at trial that various devices, such as netting, metal decking and lifelines, normally are not used during the early stages of construction projects such as this where the steel skeleton has not yet been plumbed and securely bolted and that it would have been infeasible, even dangerous, to have used any such devices. At the close of the evidence, the trial court denied plaintiff’s motion for a directed verdict, and the jury returned a verdict in defendants’ favor. Plaintiff’s motions to set aside the verdict and for a new trial were denied.
The Appellate Division, with one Justice dissenting, affirmed, holding that questions of fact as to whether defendants had violated the provisions of the Labor Law were raised by the conflicting expert testimony concerning the utility and feasibility of safety devices at this early stage of the construction, which issues of fact were properly submitted to the jury and resolved adversely to plaintiff.
In Hunt v Spitz Constr. Co., the plaintiff ironworker sustained serious injuries when he fell 25 feet from the flat roof of a *520 building on which he was welding corrugated decking. Plaintiff sought to recover damages from Kelview, Incorporated, the owner of the property, and Werner Spitz Construction Company, Inc., the general contractor, asserting their liability grounded both in negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). As in Zimmer, it is conceded that no safety device was furnished to plaintiff. Defendants introduced evidence of industry custom and usage in an attempt to establish that devices such as scaffolding, nets, safety lines and safety belts were never used on the type of building involved. They also presented evidence of various State and Federal regulations that require safety devices for work places, which they argue are either inapplicable to the situation here presented or were satisfied, thus negating any claimed violation that would constitute negligence.
Decision was reserved on plaintiff’s motion for a directed verdict made at the close of the evidence and the issue of defendants’ liability was submitted to the jury. The jury returned a verdict of no cause of action under either a negligence theory or violation of the Labor Law. The trial court granted plaintiff’s motion to set aside the verdict and for a directed verdict on liability, reasoning that in view of the uncontroverted proof that no safety devices were provided, there was no view of the evidence by which the jury could reasonably find that defendants’ failure to provide safety devices was not a contributory factor in bringing about plaintiff’s injuries and thus that there was a violation of Labor Law § 240 (1). Trial Term’s order and judgment were affirmed by the Appellate Division (99 AD2d 671) and the ensuing trial on damages resulted in a judgment of $450,000 for plaintiff. We granted defendants leave to appeal from the final judgment pursuant to CPLR 5602 (a) (1) (ii). We now reverse the Appellate Division’s order in Zimmer and affirm the order in Hunt.
We begin our analysis by again observing that the legislative history of the Labor Law, particularly sections 240 and 241, makes clear the Legislature’s intent to achieve the purpose of protecting workers by placing “ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor” (1969 NY Legis Ann, at 407), instead of on workers, who “are scarcely in a position to protect themselves from accident” (Koenig v Patrick Constr. Co., 298 NY 313, 318).
We gave early recognition to this legislative intent when we declared with respect to section 240, which was then substantially in its present form, that “this statute is one for the *521 protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed” (Quigley v Thatcher, 207 NY 66, 68, quoted in Koenig v Patrick Constr. Co., supra, at p 319).
Thus, we held unavailable to a defendant owner charged with a violation of section 240 the defense of the worker’s contributory negligence, noting that “both sound reason and persuasive decisions, involving statutes whose content and purpose are similar to section 240, require the conclusion that that statute does not permit the worker’s contributory negligence to be asserted as a defense [citations omitted]” (Koenig, supra, at p 317). So, too, in Joyce v Rumsey Realty Corp. (17 NY2d 118,122), in considering the liability of a contractor for a violation of section 241 (1) as it existed prior to 1962, which required that the contractor complete the flooring as the building progresses, we cited Koenig in holding that “[t]he duty imposed by the statute and violated by defendant [contractor] was ‘a flat and unvarying’ one * * * ‘[F]or breach of that duty, thus absolutely imposed, the wrongdoer is rendered liable without regard to his care or lack of it’” (Joyce v Rumsey Realty Corp., supra, at p 122). We held that a violation of such a statute is conclusive evidence of negligence and conclusive evidence of negligence calls for a directed verdict (Joyce v Rumsey Realty Corp., supra; see, Major v Waverly & Ogden, 7 NY2d 332, 334).
Further support for the conclusion that the failure to provide any protective devices for workers at the worksite establishes an owner or contractor’s liability as a matter of law is found in our previous holdings regarding the defenses available to an owner or contractor charged with a violation of section 240 (1) and the first five subdivisions of section 241, as contrasted to those available where the charge is a violation of a rule or regulation promulgated pursuant to section 241 (6). In Long v Forest-Fehlhaber (55 NY2d 154), the issue was whether the contributory (now comparative) negligence of the plaintiff is a defense in an action based upon the violation of administrative rules adopted pursuant to the authorization of section 241 (6). We held that although the Legislature had placed the ultimate responsibility for safety practices at the worksite on the owner and general contractor where such responsibility actually belonged, the owner and general contractor’s “ultimate responsibility” or “ultimate liability” under section 241 (6) was “unavoidable” only in the sense that it could not be delegated to another and not in the sense that it precluded an owner or contractor from *522 raising any defense to the imposition of liability. We held that because a “violation of the administrative rules adopted pursuant to the authorization of subdivision 6 of section 241 of the Labor Law cannot rise to the level of negligence as a matter of law, contributory negligence was, and comparative negligence now is, a defense to an action based on such a dereliction” (Long, at p 161).
We found this conclusion reinforced by the long-established principle that a rule of an administrative agency or an ordinance of a local government is merely some evidence to be considered on the question of a defendant’s negligence and lacks the force and effect of a substantive legislative enactment. Thus, “[u]nlike a violation of the explicit provisions of a statute proper, a breach of an administrative rule ** * * does not establish negligence as a matter of law, [thus it] does not render a plaintiff’s own negligence irrelevant and, therefore, unacceptable as a defense [citations omitted]” (Long v Forest-Fehlhaber, supra, at p 160). We further observed that subdivision 6, which “does no more than broadly provide that the owner and contractor see to it that the area where the work is to be performed is ‘so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety’ * * * does not in terms provide how these ends are to be met [and is] * * * but a reiteration of common-law standards” (id.; citations omitted). Finally, we observed that section 241 (6) is to be contrasted with the first five subdivisions of section 241, in which specific safeguards are set out, and with section 240, “a self-executing statute which, containing its own specific safety measures, does not defer to the rule-making authority of the board (Haimes v New York Tel. Co. [48 NY2d 132])” (id., at p 160; Brant v Republic Steel Corp., 91 AD2d 841; Kenny v Fuller Co., 87 AD2d 183, lv denied 58 NY2d 603; Larabee v Triangle Steel, 86 AD2d 289; France v Niagara Mohawk Power Corp., 89 AD2d 757; Monroe v City of New York, 67 AD2d 89, 105-106). Thus, a violation of section 240 (1) or the first five subdivisions of section 241 creates absolute liability. The failure to provide any safety devices is such a violation.
 In Zimmer, the claimed violations were of sections 240 (1) and 241 (4)[2] of the Labor Law. Thus, the Appellate Division *523 correctly observed that there was no allegation of common-law negligence, and that there was no error in the trial court’s failure to instruct the jury on the applicable rules and regulations issued by the Board of Standards and Appeals. However, in light of the uncontroverted fact that no safety devices were provided at the worksite, it was error to submit to the jury for their resolution the conflicting expert opinion as to what safety devices, if any, should be used during the very early stages of the construction. Rather, a verdict of liability should have been directed in plaintiff’s favor. Conversely, in Hunt, in light of the uncontroverted fact that no safety devices were provided to plaintiff at the worksite, the jury’s verdict of no liability in respect to the claimed violation of section 240 (1) was unsupportable and was properly set aside.
As indicated above, where an owner or contractor fails to provide any safety devices, liability is mandated by the statute without regard to external considerations such as rules and regulations, contracts or custom and usage. Although in Hunt, evidence of custom and usage was admissible to determine the standard of care in a negligence context under the claimed violation of sections 200 and 241 (6), where injury is allegedly caused through a violation of section 240 (1), which establishes its own unvarying standard, evidence of industry practice is immaterial (cf. International Harvester Co. v Town of Ellery, 28 AD2d 1081 [“custom, usage and practice may not waive, or in effect avoid, a mandatory statute which is clear and unambiguous on its face”]). Neither section 241 (6), nor section 200, in contrast to section 240 (1), is self-executing, but rather, both require reference to outside sources to determine the standard by which a defendant’s conduct must be measured. As noted by the Second Department in Kenny v Fuller Co. (87 AD2d 183, lv denied 58 NY2d 603, supra), “[t]he primary distinction between sections 240 (subd 1) and 241 (subd 6) is that the latter requires a determination of whether the safety measures actually employed on a job site were ‘reasonable and adequate’, while the former is mandatory in its nature and imposes absolute liability for any injury arising from its breach. The question of * * * circumstantial reasonableness is therefore irrelevant under subdivision 1 of section 240” (id., at p 186 [citations omitted]).
To determine an owner or contractor’s liability for a violation of section 240 (1) by reference to whether safety devices customarily are used, and, if so, which ones give “proper protection” *524 would allow owners and contractors to diminish their obligations under that statute and to set their own standard of care for the protection of workers at the worksite. This would clearly contravene the legislative purpose of placing “ultimate responsibility for safety * * * on the owner and general contractor” (1969 NY Legis Ann, at 407). As observed by Justice Mikoll, in her dissent in Zimmer, “[i]f the state of the building art is such that no devices have yet been devised to protect workers operating at such heights in dangerous work, it is illogical to conclude, given the purpose of the statute, that the responsibility of owners and contractors is then negated” (Zimmer v Chemung County Performing Arts, 102 AD2d 993, 995).
Appellants in Hunt and respondents in Zimmer contend that it is always an issue of fact whether “proper protection” has been provided under section 240 (1). However, when the evidence establishes the absence of any safety devices at the worksite, the statute’s clear dictates have not been met. The mere presence of ladders or safety belts somewhere at the worksite does not establish “proper protection”, leaving for the jury only the question whether the absence of safety devices was a proximate cause of the plaintiff’s injury (Brant v Republic Steel Corp., 91 AD2d 841, supra). Although the plaintiff is “required to show that the violation of section 240 of the Labor Law was a contributing cause of [his accident]” (Phillips v Flintkote Co., 89 AD2d 724, 725), and this issue should be determined by the jury, where there is no view of the evidence at trial to support a finding that the absence of safety devices was not a proximate cause of the injuries, the court may properly direct a verdict in the plaintiff’s favor (Rea v Elia Bldg. Co., 79 AD2d 1102; see, Duda v Rouse Constr. Corp., 32 NY2d 405, 410; Joyce v Rumsey Realty Corp., 17 NY2d 118, 122-123, supra; Heath v Soloff Constr., 107 AD2d 507, 512; Brant v Republic Steel Corp., supra). If proximate cause is established, the responsible parties have failed, as a matter of law, to “give proper protection.”
Accordingly, in Zimmer v Chemung County Performing Arts, we hold that the trial court erred in denying plaintiff’s motion for a directed verdict. The evidence established a breach of the statutory duty, and thus absolute liability, by defendants’ failure to provide any safety devices. There is no view of the evidence by which defendants’ violation of section 240 (1) could not have been a proximate cause of plaintiff’s injury. Thus, a new trial is required on the issue of damages only.
For the same reasons, in Hunt v Spitz Constr. Corp., we affirm the judgment appealed from and the Appellate Division *525 order brought up for review which affirmed the granting to plaintiff of judgment notwithstanding the verdict.

. Labor Law § 240 (1) provides, in pertinent part: “1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed *519 and operated as to give proper protection to a person so employed.”

. Labor Law § 241 (4) provides that:
“All contractors and owners and their agents * * * when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
* * *
“4. If the floor beams are of iron or steel, the entire tier of iron or steel beams on which the structural iron or steel work is being erected shall *523 be thoroughly planked over, except spaces reasonably required for proper construction of the iron or steel work, for raising or lowering of materials or for stairways and elevator shafts designated by the plans and specifications.”